JOHN McINTIRE *vs.* NATHANIEL T. TALBOT and others.

*Evidence relative to way by prescription.*

The issue in this case was as to the existence of a right of way by prescription, claimed by the plaintiff over the defendants land. A witness called by the defence was permitted to testify that when (several years before the dispute between the present parties arose) he had occasion to use this way, he did so by license of one Thorndike, paying him for the privilege; *held,* that this testimony was improperly admitted, it not appearing that there was any privity between the plaintiff or his grantors and the witness, or that they had any connection with the transaction; nor that Thorndike then owned the land over which the way passes.

Evidence of Thorndike's efforts to interrupt the user of the way was not properly admissible, unless he was the owner of the servient estate at the time of making them, by some title which has since come to the defendants.

It is for the jury to determine, as matter of fact, under which of two conflicting titles a person is in possession of land.

ON EXCEPTIONS.

CASE, in which the plaintiff alleged himself to be the owner of real estate in Camden, and that he is entitled by prescription to have access thereto by a way across the adjoining land of the defendants; but that the defendants, on the fifth day of October, 1871, for the purpose of depriving him of its use, stopped up said way with posts and beams. The defendants denied the existence of the right claimed. The defendants obtained a verdict in their favor, which the plaintiff moved to set aside as against the weight of evidence, and upon newly discovered evidence; and also filed numerous exceptions to the rulings, instructions and refusals of the judge; but the only two points upon which his exceptions were sustained are so apparent from the opinion that no detailed statement of the facts is necessary. There was a conflict as to whether the use of the way and the building of the lime kilns to which it afforded access, were commenced in 1832 or in 1836; and there was testimony tending to show that it was originally used

McIntire *v.* Talbot.

by license of Ebenezer Thorndike, senior, whose son (Ebenezer, junior) was a witness for the defendants, and testified to this fact. By. direction of Ebenezer, junior, the way was obstructed by timber for a while in 1854.

*Jos. Baker* and *Geo. H. M. Barrett*, for the plaintiff.

*Gould & Moor e* for the defendants.

DANFORTH, J.   David Talbot, a witness for the defendants testified in substance that "as an owner of the schooner Ceylon, he repaired it in 1848–9 ; that, before commencing the repairs, he had an arrangement with Mr. Ebenezer Thorndike, senior, with respect to crossing his land ; that he obtained his consent and paid him money therefor." This was objected to and "excluded unless it applies to this other road." It was then admitted as applicable to "this other road," which we understand to be the way in question. The matter in issue is whether the plaintiff is, by prescription, entitled to a private way across the defendants' land. It does not appear that the plaintiff or his grantors is or were in privity with the witness. They do not claim by, through, or under him. Nor does it appear that they were connected with, or had any knowledge of, the transaction referred to.

The acts therefore of Mr. Talbot, or his arrangements with Mr. Thorndike, would have no tendency to prove or disprove the matter in issue, but would be very likely to have an unfavorable effect upon the plaintiff's case and should have been excluded.

Much more should the testimony have been excluded if, at the time referred to, Mr. Thorndike was not the owner of the land over which the alleged way passes.

The admissibility of the testimony of N. T. Talbot, one of the defendants, in relation to the efforts of Mr. E. Thorndike, senior, to interrupt the user of the way in 1854, depends upon whether Thorndike at that time had a title to the servient estate which has been transmitted to the defendants.

The presiding justice instructed the jury substantially that

Thorndike, upon the testimony, had authority to interfere with the use of the way, and that an ·interruption by him would enure to the defendants.

To authorize such an instruction, he must have had some title which has come to the defendants, and the case must show it as matter of law.

It appears that in 1796, Paul Thorndike, senior, being in possession of lot 25 in Camden, conveyed five-sixths of a portion of it to Ephraim Barrett and four others, "in equal parts or shares." In 1823, Barrett conveyed his one-sixth by quitclaim deed to said Ebenezer Thorndike. Whether the portion of lot 25 thus conveyed included all, or a part, of the land over which the way in question passes does not clearly appear, but from the deed in the case it seems that this quitclaim deed is all the title which Ebenezer had in the premises in 1854, when it is claimed he interrupted the use of this way.

There is testimony tending to show that Ebenezer occupied the premises with his brother Paul, junior, up to the time of Paul's death in 1846, and after that and up to a time subsequent to 1854, the time of the alleged interruption, alone.

On the other hand, in 1826, one Jonathan Thayer recovered judgment against Paul Thorndike, junior, and levied his execution upon the premises as the sole property of said Paul. This title is the one claimed by the defendants, coming to them through several mesne conveyances.

It is true that a conveyance from the heirs of Ebenezer, is one of the links in the defendants' title, but it is also true that another link is a conveyance from Sarah T. Smart and Rebecca K. Thayer, grantees of Jonathan Thayer, to said Ebenezer, dated in 1856, subsequent to the alleged interruptions.

The result is that, so far as the deeds show, the defendants are claiming under a title which in 1826, the date of the levy, and up to 1856 was adverse to any title whatever in Ebenezer.

Whether he had a title in 1854 would depend materially upon the nature of his previous possession ; whether he was in under

Paul, junior, and in submission to his title, and that obtained by the levy, or whether he was holding adversely thereto and under his deed from Barrett. A fair inference from the testimony might perhaps lead to the latter conclusion; still, it is a question for the jury, and the error was in taking it from them.

If said Ebenezer acquired a title before 1854, by his deed from Barrett, or by adverse possession, or by both, and transmitted that title to the defendants, they could legally avail themselves of whatever he did for the purpose of interrupting the use of the way by the plaintiff's grantors. But if he transmitted to them no title except such as he acquired by his deed from Thayer's grantees, there would be no such privity between him and the defendants as would authorize them to make use of his acts in 1854.

*Exceptions sustained.*

APPLETON, C. J., WALTON, BARROWS and VIRGIN, JJ., concurred.